## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

JACKSON COUNTY, MISSOURI,
on behalf of itself and the proposed Class,

*Plaintiff,*

v.

ELI LILLY AND COMPANY, et al.,

*Defendants.*

Civil Action No. 23-206

Removed from Case No. 2316-CV01801, 16th Judicial Circuit Court, Jackson County, Missouri

## <u>NOTICE OF REMOVAL</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

JACKSON COUNTY'S ALLEGATIONS...........................................................................5

PROCEDURAL HISTORY.................................................................................................6

VENUE ...........................................................................................................................7

GROUNDS FOR REMOVAL............................................................................................7

    A.    Defendant Acted Under the Direction of a Federal Agency....................................7

    B.    The Defendant's Charged Conduct is Carried Out "For or Relating to" the Asserted Official Authority.................................................................................9

    C.    Defendant has a Colorable Federal Defense to Jackson County's Claims. ...........11

    D.    Defendant is a "Person" Within the Meaning of § 1442. ....................................13

SUPPLEMENTAL JURISDICTION ..................................................................................13

ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.............................................13

    A.    The Notice of Removal Is Timely. .....................................................................13

    B.    Consent Is Not Required......................................................................................14

    C.    Written Notice of Removal..................................................................................14

    D.    Non-Waiver of Defenses......................................................................................14

    E.    Other. .................................................................................................................15

# **TABLE OF AUTHORITIES**

## **CASES**

*Allen v. Allen*, 291 F. Supp. 312 (S.D. Iowa 1968)..........................................................13

*Buljic v. Tyson Foods, Inc.*, 22 F.4th 730 (8th Cir. 2021) ...........................................7, 8

*Coventry Health Care, Inc. v. Nevils*, 581 U.S. 87 (2017) .............................................2

*Devazier v. Caruth*, 2016 WL 3939777 (E.D. Ark. July 15, 2016)................................14

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006).............................14

*Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006).......................2

*Fernandez v. Tyson Foods, Inc.*, 509 F. Supp. 3d 1064 (N.D. Iowa 2020) ..................14

*Freeman v. Bee Mach. Co.*, 319 U.S. 448 (1943)..........................................................14

*Garden Homes, Inc. v. Mason*, 238 F.2d 651 (1st Cir. 1956)........................................15

*Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) ...........................................................11

*Graves v. 3M Co.*, 447 F. Supp. 3d 908 (D. Minn. 2020)................................................9

*Jacks v. Meridian Resource Co., L.L.C.*, 701 F.3d 1224 (8th Cir. 2012) ......................8

*Jackson County, Missouri v. Eli Lilly, et al.* (Case No. 2316-CV-01801)......................1

*Jefferson Cnty. v. Acker*, 527 U.S. 423 (1999) ..........................................................7, 9

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) .......................................................10

*Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99 (D. Conn. 2007) .........................10

*McGillick v. World Trade Ctr. Props., LLC*, 2004 WL 2049260 (S.D.N.Y. Sept. 13, 2004) ...........................................................................................................................13

*Moss v. Atl. Coast Line R.R. Co.*, 157 F.2d 1005 (2d Cir.1946)....................................15

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ..................13

*Oberstar v. CBS Corp.*, 2008 WL 11338471 (C.D. Cal. Feb. 11, 2008).......................10

*PT United Can Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998)................15

*Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D. Cal. Sept. 30, 2008) .........10

*St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524 (E.D. La. 2011) ................................................................................................................13

*Takacs v. Am. Eurocopter, LLC*, 656 F. Supp. 2d 640 (W.D.Tex. 2009) ....................................13

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007) .............................................................7

*Willingham v. Morgan*, 395 U.S. 402 (1969) ...............................................................................7

## OTHER AUTHORITIES

5 U.S.C. §§ 8901-8913 ....................................................................................................................3

5 U.S.C. § 8902 .........................................................................................................................3, 11

28 U.S.C. § 105 ...............................................................................................................................7

28 U.S.C. § 1367 ...........................................................................................................................13

28 U.S.C. § 1442 .....................................................................................................................*passim*

28 U.S.C. § 1446 ........................................................................................................................1, 7

5C FED. PRAC. & PROC. CIV. § 1395 (3d ed.) ...........................................................................14

Federal Rule Civ. P. 12(b) ............................................................................................................14

Local Rule 7.1 ...............................................................................................................................14

*Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers* (2019), *available at* https://www.opm.gov/healthcare-insurance/healthcare/carriers/experience-rated.doc (last visited Mar. 27, 2023) ................................................................................................3, 4, 5

Pursuant to and in accordance with 28 U.S.C. §§ 1442(a) and 1446, through the undersigned counsel, Defendant CaremarkPCS Health, L.L.C. ("CaremarkPCS Health") hereby removes *Jackson County, Missouri v. Eli Lilly, et al.* (Case No. 2316-CV-01801) from the Sixteenth Judicial Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri.   A true and correct copy of the Complaint is attached hereto as Exhibit A.

## **INTRODUCTION**

1.      The Complaint takes aim at well-known and industry-standard arrangements between manufacturers of pharmaceutical drugs and pharmacy benefit managers ("PBMs") with whom they contract.   PBMs provide valuable services to their health-plan clients, including negotiating with the manufacturers to obtain rebates for pharmaceutical drugs.   The clients for which PBMs provide these services include health care plans governed by the Federal Employees Health Benefits Act ("FEHBA").   Federal regulators explicitly recognize that PBMs will engage in negotiations for rebates on behalf of FEHBA health plans, and require that such PBMs pass through the rebates that they receive to their federal clients.

2.      Jackson County's allegations in this lawsuit challenge this important service provided by the PBM industry, implausibly claiming that the negotiated rebates are actually covert payments made to benefit PBMs and manufacturers.   According to the Complaint, the PBM model has led to drastic increases in the price of various diabetes medications, and Jackson County therefore seeks damages for its alleged overpayment in its own contracts, as well as declaratory and injunctive relief to stop rebating.   But some of the conduct for which Jackson County seeks damages and injunctive relief is governed by federal contract, and carried out by CaremarkPCS Health acting under the direction of a federal agency.   For this reason and others discussed below, CaremarkPCS Health has federal defenses that it is entitled to litigate in a federal forum.

1

## BACKGROUND

3.      Jackson County alleges a sprawling, industrywide "Pricing [S]cheme" involving insulin manufacturers Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC ("Manufacturer Defendants"); and pharmacy benefit managers ("PBMs") including CaremarkPCS Health.

4.      PBMs, like CaremarkPCS Health, contract with health plan sponsors, such as public and private employers, to administer prescription drug benefits.  Compl. ¶¶ 6, 256-57, 264. Among other things, PBMs develop lists of drugs called "formularies" that their health-plan clients can adopt to determine whether and to what extent those clients cover the cost of certain medications for their members.  *Id.* ¶¶ 7-10.  Although PBMs develop formulary products that they offer to clients, *id.* ¶ 6, their clients decide whether to accept, reject, or customize an offered formulary and set the coverage that applies to their members.  *See id.* ¶ 281.

5.      PBMs play an important role in managing the out-of-pocket cost of pharmaceutical drugs for their health-plan clients.  PBMs negotiate with pharmaceutical manufacturers to obtain rebates from manufacturers that can offset the cost of pharmaceutical drugs.  Those rebates flow back to the PBMs' clients in accordance with the terms of their client contracts, lowering the clients' net drug costs.

6.      Accordingly, federal regulators expressly contemplate that PBMs will engage in such negotiations on behalf of their clients, including health plans that provide benefits to federal employees who receive insurance under the FEHBA.  The FEHBA "establishes a comprehensive program of health insurance for federal employees."  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006).  The FEHBA "assigns to OPM broad administrative and rulemaking authority over the program," *Coventry Health Care, Inc. v. Nevils*, 581 U.S. 87, 91

(2017) (citing 5 U.S.C. §§ 8901-8913), and authorizes OPM to contract with private carriers for federal employees' health insurance, 5 U.S.C. § 8902(a).

7.     OPM requires that participating health insurance plans include prescription drug coverage, but permits FEHBA carriers to contract with PBMs and delegate certain responsibilities to them.   OPM expressly contemplates that FEHBA carrier-PBM contracts will include "Manufacturer Payments," which it defines broadly to mean "any and all compensation, financial benefits, or remuneration the PBM receives from a pharmaceutical manufacturer, including but not limited to, discounts; credits; rebates, regardless of how categorized; market share incentives, chargebacks, commissions, and administrative or management fees" as well as "any fees received for sales of utilization data to a pharmaceutical manufacturer."  Off. of Personnel Mgmt., *Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers*, at I-18 (2019) ("FEHB Standard Experience-Rated HMO Contract"), *available at* https://www.opm.gov/healthcare-insurance/healthcare/carriers/experience-rated.doc (last visited Mar. 27, 2023).  To that end, OPM contractually requires that FEHBA carriers include in any such contract with PBM specific provisions relating to formularies and Manufacturer Payments:

> a.  OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that require the PBM to provide quarterly and annual reports regarding "Manufacturer Payments" that are negotiated or collected from drug manufacturers, including payments "in return for formulary placement and/or access."   FEHB Standard Experience-Rated HMO Contract at I-19.

    b.   OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that specifically control how PBMs must incorporate rebates into reported pricing: "The PBM agrees to provide pass-through transparent pricing based on the PBM's cost for drugs (as described below) in which the Carrier receives the value of the PBM's negotiated discounts, rebates, credits or other financial benefits." FEHB Standard Experience-Rated HMO Contract at I-18.

    c.   OPM contractually requires FEHBA carriers to include in contracts with PBMs a provision by which "[t]he PBM, or any other entity that negotiates and collects Manufacturer Payments allocable to the Carrier agrees to credit to the Carrier either as a price reduction or by cash refund the value [of] all Manufacturer Payments properly allocated to the Carrier." FEHB Standard Experience-Rated HMO Contract at I-18.

8.    Subject to these requirements, rebate amounts negotiated by PBMs and credited to the FEHBA carrier reduce the amounts paid for medicine—including diabetes medicine—by the federal government in connection with FEHBA benefits.

9.    OPM also contractually requires FEHBA carriers to agree to provisions that enable OPM to exercise direct oversight of certain PBM activities, including with respect to Manufacturer Payments:

    a.   OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that specifically require PBMs to provide to OPM upon request "[a]ll PBM contracts with Pharmaceutical Manufacturers." FEHB Standard Experience-Rated HMO Contract at I-19.

4

b.  OPM is contractually entitled to "review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM." FEHB Standard Experience-Rated HMO Contract at I-19.

10.     Defendant CaremarkPCS Health has contracts with FEHBA carriers pursuant to which CaremarkPCS Health provides delegated pharmacy benefit management services, including with regard to formularies and payments from prescription drug manufacturers to PBMs ("Manufacturer Payments").

## JACKSON COUNTY'S ALLEGATIONS

11.     Jackson County's allegations challenge and seek to enjoin core business practices by which CaremarkPCS Health and other PBMs reduce drug costs for their clients.  The Complaint alleges that the PBMs' negotiations with manufacturers are not hard-fought, arms-length transactions, but a conspiracy to raise the price of insulin.  The Complaint alleges that the Manufacturer Defendants have artificially inflated list prices of the at-issue drugs, and that the industry-standard rebates are "Manufacturer Payments" made in exchange for inclusion on their formularies.  Compl. ¶¶ 27-28.

12.     Thus, the Complaint alleges an industry-wide insulin pricing "scheme" in which Manufacturers raise the price of insulin in order to increase the size of the rebates flowing back to the PBMs in exchange for preferred formulary placement.  *Id.*  ¶¶ 277-92.  The Complaint alleges that, as a result, "payors' and diabetics' spending on diabetes medications has skyrocketed."  *Id.* ¶ 240.

13.     Jackson County alleges that it and the proposed Class Members "have been damaged by having to pay overcharges as payors for and purchasers of the at-issue drugs," and

that the purported scheme involving rebates "directly harms every diabetic" in Missouri. *Id.* ¶ 194, 240, 252-55.

14.     Jackson County's claims in this case broadly challenge core services that CaremarkPCS Health offers or provides to all of its clients, including those governed by FEHBA contracts.  The relief Jackson County seeks—including injunctive relief as well as damages and declaratory relief—would impair (if not eliminate) CaremarkPCS Health's ability to deliver those services to clients, including FEHBA clients. *Id.* ¶¶ 343, 350.

15.     As more fully explained below, CaremarkPCS Health has colorable preemption defenses to Jackson County's claims, permitting removal under 28 U.S.C. § 1442(a)(1).

## PROCEDURAL HISTORY

16.     On January 11, 2023, Jackson County filed a Complaint in the Sixteenth Judicial Circuit Court of Jackson County, Missouri on behalf of itself and the proposed Class (the "County" or collectively "Plaintiffs").  The proposed Class consists of "Missouri counties and municipalities with a population greater than 20,000." *Id.* ¶ 33.

17.     On February 24, 2023, CaremarkPCS Health accepted service of the Complaint.

18.     Jackson County brings its action against two categories of defendants: "Manufacturer Defendants" and "PBM Defendants." *Id.* ¶¶ 4-5.

- •     Jackson County alleges that the "Manufacturer Defendants" are Eli Lilly and Company; Novo Nordisk Inc.; and Sanofi-Aventis Jackson County, Inc.

- •     Jackson County alleges that the "PBM Defendants" are Express Scripts Administrators, L.L.C.; ESI Mail Pharmacy Service, Inc.; Medco Health Solutions, Inc.; CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; UnitedHealth Group, Inc.; Optum, Inc.; OptumRX, Inc.; OptumRX Holdings L.L.C.; and OptumInsight, Inc.

## VENUE

19.     Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the Sixteenth Judicial Circuit Court of Jackson County, Missouri, the court from which removal is sought.  *See* 28 U.S.C. § 1446(a); *see* 28 U.S.C. § 105(b).

## GROUNDS FOR REMOVAL

20.     The federal-officer-removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court.  28 U.S.C. § 1442(a)(1).

21.     The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute."  *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *see also Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) ("The federal officer removal statute is to be liberally construed, and thus the typical presumption against removal does not apply." (internal quotation marks omitted)).

22.     To remove under § 1442 in this Circuit, a party who, like CaremarkPCS Health, is not an actual federal officer or agency must show that (1) the defendant acted under the direction of a federal officer, (2) there is a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiffs' claims, and (4) the defendant is a "person" within the meaning of the statute.  *See Buljic*, 22 F.4th at 738. CaremarkPCS Health satisfies all four elements here.

### A.      Defendant Acted Under the Direction of a Federal Agency.

23.      "The words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'"  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).  To act "under the direction of a federal officer," a federal officer or agency and contractor

must have a relationship that amounts to "delegation."  *Jacks v. Meridian Resource Co., L.L.C.*, 701 F.3d 1224, 1233-34 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor and City of Baltimore*, 141 S. Ct. 1532 (2021).

24.     CaremarkPCS Health contracts with FEHBA carriers that provide health benefits to federal employees, including those residing in Jackson County, as well as the residents of the proposed Class Members, and it provides pharmacy benefit management services subject to the above requirements imposed by OPM.  CaremarkPCS Health's FEHBA carrier clients include the Blue Cross and Blue Shield Federal Employee Program ("FEP"), the Government Employees Health Association ("GEHA"), the National Association of Letter Carriers ("NALC"), and the Mail Handlers Benefit Plan ("MHBP").

25.     As previously set forth, CaremarkPCS Health provides PBM services to FEHBA clients pursuant to contracts that contain OPM-mandated provisions regarding rebates.  *Supra* at ¶¶ 7, 9.  Pursuant to those OPM requirements, rebates negotiated by CaremarkPCS Health are credited to the FEHBA carrier and reduce the amounts paid for medicine—including diabetes medicine—by the federal government in connection with FEHBA benefits.  *Supra* at ¶ 10.  Indeed, the Eighth Circuit already has held that health insurance providers operating FEHBA contracts "conduct business under the delegation of the federal government" and thus qualify for removal under § 1442(a)(1).  *Jacks*, 701 F.3d at 1234; *see Buljic*, 22 F.4th at 739.  PBMs, like CaremarkPCS Health, perform similar functions.

26.     Therefore, CaremarkPCS Health satisfies the "under the direction" requirement for contractors under § 1442(a)(1).

**B.    The Defendant's Charged Conduct is Carried Out "For or Relating to" the Asserted Official Authority.**

27.    In 2011, Congress amended § 1442(a)(1) to provide that a suit need only be "for or *relating to* any act under color of [United States] office." 28 U.S.C. 1442(a)(1) (2011) (emphasis added). The statute's low hurdle now requires that a suit "plausibly have *some* connection to, or association with, governmental actions." *Graves v. 3M Co.*, 447 F. Supp. 3d 908, 913 (D. Minn. 2020), *aff'd*, 17 F.4th 764 (8th Cir. 2021) (emphasis added).   And "the Supreme Court has made clear that the courts should credit [a] Defendant'[s] theory of the case when determining whether a causal connection exists." *Id.* (citing *Jefferson Cnty.*, 527 U.S. at 432).

28.    Jackson County challenges CaremarkPCS Health's practices with regard to formularies and Manufacturer Payments.  But Jackson County does not challenge such conduct merely in connection with services provided by CaremarkPCS Health (or other PBMs) directly to Jackson County (or other proposed Class Members).  Indeed, Jackson County never even alleges that CaremarkPCS Health contracted with or provided any services to Jackson County.  To the contrary, Jackson County's claims hinge on allegations about the *nation-wide* market power of CaremarkPCS Health and other PBMs, *e.g.*, Compl. ¶¶ 5, 8-10, and *nation-wide* changes to insulin prices made by PBM manufacturers, *e.g.*, *id.* ¶¶ 12-19.  Because Jackson County's allegations regarding CaremarkPCS Health's alleged misconduct sweep across (and indeed depend upon) its work on behalf of all of its clients—including its FEHBA clients—there is a "plausible connection" between its alleged actions and the official authority.

29.    Jackson County's assertion that its claims do not "implicate any federal aid programs" since it "does not seek any relief on behalf of individual patients or consumers within Missouri" is futile.  *Id.* ¶ 200.  "Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed

complaint, neither plaintiffs' disclaimer nor its characterization of their claims are determinative." *Oberstar v. CBS Corp.*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008) (citing *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007)). Jackson County could not possibly sever CaremarkPCS Health's conduct negotiating rebates for FEHBA carriers from other conduct that it alleges "harms every diabetic and payor in Missouri." Compl. ¶ 28.

30.     Jackson County's disavowal of federal claims is untenable, given its allegations about how the alleged scheme operates. Jackson County alleges that the manufacturers have "artificially inflated" the list price for insulin in part because of rebates that they pay to PBMs. *Id.* ¶¶ 21-23. Jackson County further alleges that the list price is the "unifying factor" determining what each entity in the pharmaceutical chain, including payors *and patients*, pays for a drug. *Id.* ¶¶ 250-52. But it has not and cannot explain how CaremarkPCS Health's rebate negotiations for insulin distributed through non-federal channels affected list prices, but its rebate negotiations for insulin distributed under the federal FEHBA contracts did not. A purported disavowal of federal claims will not defeat federal officer removal where, as here, the plaintiff nonetheless seeks to hold defendant liable for "any injuries . . . caused by any acts or omissions of a party committed at the direction of an officer of the United States Government." *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729, at *3 (N.D. Cal. Sept. 30, 2008).

31.     Additionally, Jackson County's effort to disavow relief relating to any federal program would require a premature ruling on the fact-specific issue of whether the cause of Jackson County's claimed injury from the PBMs' negotiation of Manufacturer Payments for carriers acting only on behalf of private entities can be separated and divided from the PBMs' negotiation of manufacturer payments for FEHBA carriers authorized by OPM. Compl. ¶¶ 255, 289; *see Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) (recognizing that "resolution

of material factual disputes" relevant to the propriety of removal should be left "to the [federal] trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim.").

32.     Finally, Jackson County's disclaimer is ineffective because of the injunctive relief it seeks.  Compl. ¶ 343.  Jackson County requests an injunction prohibiting "Defendants from continuing to engage in the wrongful conduct outlined" in the Complaint.  *Id*.  That relief, if granted, necessarily would affect CaremarkPCS Health's conduct with regard to rebates and formularies for FEHBA clients, which as explained above is subject to OPM requirements.

33.     Thus, the relief Jackson County seeks necessarily will impact CaremarkPCS Health's performance of services for FEHBA plans.

### C.     Defendant has a Colorable Federal Defense to Jackson County's Claims.

34.     For federal-officer removal purposes, a defense only needs to be colorable.  *Graves v. 3M Co.*, 17 F.4th 764, 771 (8th Cir. 2021) ("For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." (citation omitted)).

35.     Here, CaremarkPCS Health has colorable preemption-based defenses.

36.     FEHBA provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1).  As explained above, contracts with OPM contain terms that govern the PBMs' obligations as they relate to formularies and rebates.  Jackson County's request for injunctive relief does not and cannot avoid interfering with the PBMs' obligations contained in the contracts.

37.     As set forth above, the contractual terms imposed by OPM authorize PBMs to negotiate for and collect Manufacturer Payments.   Jackson County's claims in this case fundamentally challenge whether PBMs are permitted to negotiate for or obtain Manufacturer Payments.  Compl. ¶ 21 (alleging "Manufacturer Payments," including rebates, are "quid pro quo for formulary inclusion on the PBMs' standard offerings"); *id.* ¶ 285 ("Manufacturers have artificially inflated their list prices for the at-issue drugs exponentially, while largely maintaining their net prices by paying larger and larger amounts of Manufacturer Payments back to the PBMs.").

38.     As set forth above, the contractual terms imposed by OPM require PBMs to disclose Manufacturer Payments as reductions to the costs associated with prescription drugs, including insulin.  Jackson County's claims in this case fundamentally challenge whether PBMs are permitted to make any representation that Manufacturer Payments reduce payors' costs.  *Id.* ¶ 289 (alleging PBMs use the "false price" to "misrepresent" the amount of savings they generate for diabetics, payors, and the healthcare system).

39.     As set forth above, the contractual terms imposed by OPM authorize Manufacturer Payments in connection with formulary placement and/or access.  Jackson County's claims in this case fundamentally challenge the propriety of formularies developed by PBMs, and whether PBMs are permitted to consider Manufacturer Payments.  *Id.* ¶¶ 24-27 (alleging that a key element of the pricing scheme was Manufacturer Defendants' payments to PBM Defendants "to buy preferred formulary position").

40.     Jackson County seeks to enjoin the PBM Defendants from negotiating contracts containing authorized Manufacturer Payments or agreeing to formulary placement.  Jackson

County's requested injunctive relief would therefore interfere with CaremarkPCS Health's obligations to comply with their responsibilities to OPM pursuant to FEHBA contracts.

### D. Defendant is a "Person" Within the Meaning of § 1442.

41. CaremarkPCS Health is a "person" under the federal-officer-removal statute because corporations and limited liability companies qualify as "persons" under § 1442(a)(1). *Allen v. Allen*, 291 F. Supp. 312, 313-14 (S.D. Iowa 1968) (corporations); *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, 530 (E.D. La. 2011) (limited liability companies); *Takacs v. Am. Eurocopter, LLC*, 656 F. Supp. 2d 640, 645 (W.D.Tex. 2009); *McGillick v. World Trade Ctr. Props., LLC*, 2004 WL 2049260, *2 (S.D.N.Y. Sept. 13, 2004).

### SUPPLEMENTAL JURISDICTION

42. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Jackson County's claims against the Manufacturer Defendants. Jackson County's claims against the Manufacturer Defendants are "other claims that are so related to" its claims regarding FEHBA that "they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). Additionally, and alternatively, Jackson County alleges that "working in coordination with the PBMs, the Manufacturers have artificially inflated their list prices for the at-issue drugs exponentially, while largely maintaining their net prices by paying larger and larger amounts of Manufacturer Payments back to the PBMs." *See, e.g.*, Compl. ¶ 285. Therefore, based on the nature of Jackson County's conspiratorial allegations involving at least in part FEHBA, for this additional reason, the Court should exercise supplemental jurisdiction over the entire Action.

### ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A. The Notice of Removal Is Timely.

43. This Notice of Removal is timely. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

### B.      Consent Is Not Required.

44.      The federal-officer-removal statute does not require other Defendants to consent to removal.  *See Devazier v. Caruth*, 2016 WL 3939777, at *2 n.3 (E.D. Ark. July 15, 2016) ("[T]he Federal Officer Removal Statute does not require that all defendants consent to removal; instead, a federal officer or agency defendant can remove the case under that statute without unanimous consent." (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006))). Indeed, "[i]t is the settled rule that removal under 28 U.S.C. § 1442 can be effected by any defendant in an action, with or without the consent of co-defendants." *Fernandez v. Tyson Foods, Inc.*, 509 F. Supp. 3d 1064, 1068 n.1 (N.D. Iowa 2020) (citation omitted).

### C.      Written Notice of Removal.

45.      CaremarkPCS Health will file with this Notice of Removal a copy of all process, pleadings, and orders served on it.

46.      As required by local rule 7.1, CaremarkPCS Health will file with this Notice of Removal its Certificate of Interest.

### D.      Non-Waiver of Defenses.

47.      By filing this Notice of Removal, CaremarkPCS Health reserves and does not waive any procedural or substantive defense available to it, including, without limitation, lack of subject-matter jurisdiction or personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted.  *See* 5C FED. PRAC. & PROC. CIV. § 1395 (3d ed.) ("A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections. . . . [I]nasmuch as the jurisdiction of a removed action essentially is derivative, any defect in jurisdiction or process present in the state suit may be asserted in the district court following removal." (footnotes omitted)); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 449 (1943) ("[W]here

14

a state court lacks jurisdiction of the subject matter or of the parties, the federal District Court acquires none on a removal of the case.  That is true even where the federal court would have jurisdiction if the suit were brought there." (citations omitted)); *PT United Can Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) ("A party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action."); *Garden Homes, Inc. v. Mason*, 238 F.2d 651, 653 (1st Cir. 1956) ("Effective service is, of course, the keystone to a court's personal jurisdiction over the defendant, and it is clear that this defense is not waived upon removal of an action from the state court to a federal court." (citations omitted)); *Moss v. Atl. Coast Line R.R. Co.*, 157 F.2d 1005, 1006 (2d Cir.1946) ("[A] defendant is not precluded from having the suit dismissed because its motion to remove was in any sense the waiver of a right, for it has waived nothing by taking that action . . . .").

**E.     Other.**

48.     Promptly after the filing of this Notice of Removal, CaremarkPCS Health will give written notice of the removal to Jackson County, through its attorney of record.

WHEREFORE, Defendant CaremarkPCS Health, L.L.C. removes this Action to this Court for further proceedings according to law.

This 27th day of March, 2023

Respectfully submitted,

*/s/ Casey P. Murray*

| Casey P. Murray, | #58741 |
|---|---|
| Emily N. Reed, | #73908 |

**SPENCER FANE LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
Tel: (816) 474-8100
Fax: (816) 474-3216
cmurray@spencerfane.com
ereed@spencerfane.com
*Attorney for CVS Health Corporation; CVS*
*Pharmacy, Inc.; Caremark Rx, L.L.C.;*
*CaremarkPCS Health, L.L.C.; and*
*Caremark, L.L.C.*

OF COUNSEL:

Enu Mainigi (*pro hac* vice forthcoming)
Craig Singer (*pro hac vice* forthcoming)
R. Kennon Poteat III (*pro hac vice* forthcoming)
A. Joshua Podoll (*pro hac vice* forthcoming)
Daniel Dockery (*pro hac vice* forthcoming)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue S.W.
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 27th day of March 2023, a true and accurate copy of the foregoing instrument was filed electronically with the United States District Court for the Western District of Missouri utilizing the Court's CM/ECF Electronic Filing System causes a copy of the same to be served on all counsel of record with notice of case activity generated.

*/s/ Casey P. Murray*
An Attorney for Defendant
CaremarkPCS Health, LLC
